**STATE of Iowa, Appellee,**

v.

**David Wayne CHRISMAN, Appellant.**

No. 92–1582.

Supreme Court of Iowa.

Feb. 23, 1994.

Linda Del Gallo, State Appellate Defender, and Andi S. Lipman, Asst. State Appellate Defender, for appellant.

Bonnie J. Campbell, Atty. Gen., Martha E. Boesen, Asst. Atty. Gen., Charles A. Stream, County Atty., and Vicki Siegel, Asst. County Atty., for appellee.

Considered by LARSON, P.J., and CARTER, LAVORATO, NEUMAN, and TERNUS, JJ.

TERNUS, Justice.

Defendant David Wayne Chrisman appeals his convictions of two counts of third-degree theft and two counts of second-degree burglary in violation of Iowa Code sections 714.-1(1), 714.2(3), 713.1, and 713.5 (1991). Chrisman argues that: (1) there was insufficient evidence to support two theft convictions; (2) the district court erred in denying his motion to suppress evidence allegedly seized in violation of the Fourth Amendment; and (3) Iowa Code section 4.13 requires that he be sentenced for the thefts and burglaries under amended statutes that mitigated his punishment. We affirm Chrisman's convictions on all counts and his sentences for second-degree burglary, vacate his sentences for third-degree theft, and remand for resentencing.

I. *Background Facts and Proceedings.*

On the night of February 6, 1992, two buildings on the Mahaska Farm Service property were burglarized. A Farm Service employee discovered the burglary to the service center building around 10:30 p.m. that evening. The police officers called to the scene found that the feed mill building had also been burglarized. Safes in both buildings had been pried open and cash was missing from them. The burglars had taken approximately $110 from the service center safe and $115 from the feed mill safe.

The investigating officers, Charles Van Toorn and Barb Saville, observed two sets of footprints at the scene. One footprint was found on a piece of notebook paper lying by a safe and was made by Adidas brand tennis shoes.

Earlier that evening at around 9:30 p.m., Officer Scott McCallum was on patrol and observed a car parked on the shoulder of the road about half a block from the Farm Service property. McCallum stopped his car to investigate. The car's male driver, the only occupant, told McCallum that his car had overheated but that it would run again in a few minutes. McCallum ran a routine license check on the car and its registered owner and proceeded with his patrol. When he learned of the burglaries at the Farm Service buildings, he reported this incident to Van Toorn and Saville and informed them that the car was registered to Robin Damiano.

At around 3:30 a.m. on February 7, Van Toorn and Saville went to Damiano's apartment. Damiano answered the door and told them they could come inside. They entered and saw Chrisman lying on a bed in the one room apartment. Saville noticed a pair of Adidas tennis shoes under an end table. The officers asked if they could look at the shoes and either Damiano or Chrisman handed them to Saville. The officers then asked if they could take the shoes with them. Chrisman refused their request so the officers took the shoes without his consent.

Chrisman was charged by trial information with two counts of burglary in the second degree and two counts of theft in the third degree. Chrisman filed a motion to suppress the Adidas tennis shoes. The district court denied the motion and this evidence was admitted at trial.

A jury found Chrisman guilty of all charges. At the sentencing hearing on October 2, 1992, Chrisman requested that he be sentenced under the amended burglary and theft statutes. 1992 Iowa Acts ch. 1060, § 1 and ch. 1231, § 61. The court denied this request and sentenced Chrisman pursuant to Iowa Code sections 713.5 and 714.2(3) (1991). Chrisman was sentenced as an habitual offender to fifteen years on each of the burglary counts. He was also sentenced to a term not to exceed two years on each theft count. Chrisman appeals his convictions and sentences.

II. *Theft Convictions.*

Chrisman argues that there was insufficient evidence to support two theft convic-

tions. His primary contention is that Iowa Code section 714.3 requires that his acts should have been considered as one theft. Section 714.3 provides in pertinent part:

> If money or property is stolen from the same person or location by two or more acts, or from different persons by two or more acts which occur in approximately the same location or time period so that the thefts are attributable to a single scheme, plan or conspiracy, these acts may be considered a single theft and the value may be the total value of all the property stolen.

■ A. *Error preservation.* The State contends that Chrisman's challenge is not really to the sufficiency of the evidence but is actually a challenge to the trial information. Iowa Rule of Criminal Procedure 10(2) requires that objections based on defects in the information must be raised prior to trial. *See also State v. Grindle,* 215 N.W.2d 268, 269 (Iowa 1974). Because Chrisman did not object to the trial information, the State argues that he waived the issue of whether his acts should have been considered one theft under section 714.3.

At trial Chrisman moved for a judgment of acquittal at the close of the State's evidence and again at the close of all the evidence. Chrisman argued that the State failed to establish the existence of two separate thefts. He raised the same issue in a motion for new trial. The district court denied each motion.

Whether a particular defendant's acts constitute a single theft depends on the facts of the crime. Until the parties make a factual record, the court does not have an adequate basis to decide this issue. Consequently, Chrisman was not required to challenge the trial information charging him with two thefts. Thus, he adequately preserved error by raising this issue after the State presented its case.

■ B. *Effect of section 714.3.* Section 714.3 provides that two or more acts *may* be considered a single theft if certain conditions are met. The use of the word "may" ordinarily confers a power, not a duty. *Fernandez v. Curley,* 463 N.W.2d 5, 8 (Iowa 1990); *see* Iowa Code § 4.1(36)(c) (1991). As one authority notes, "the prosecution is not required to accumulate thefts no matter how closely they may be connected." 4 Ronald L. Carlson and John L. Yeager, *Criminal Law and Procedure* § 324, at 99 (Supp.1993). We conclude that section 714.3 did not require the State to charge Chrisman with only one theft.

■ C. *Single larceny rule.* Chrisman also relies upon the case of *State v. Amsden,* 300 N.W.2d 882 (Iowa 1981). He argues that consolidation of theft charges is required when a series of takings are the result of a single criminal impulse. We disagree.

In *Amsden,* the defendant was charged with one count of first-degree theft based on the aggregation of five incidents of taking money from several people on several occasions. We considered whether the evidence was sufficient to support the factual findings necessary for aggregation of the five thefts under section 714.3. We did not hold that aggregation was required which is what Chrisman argues in this case.

Chrisman apparently relies on the single larceny rule followed in Iowa and discussed in *Amsden. See Amsden,* 300 N.W.2d at 885; *State v. Cabbell,* 252 N.W.2d 451, 453 (Iowa 1977). "Under the single larceny rule '. . . the stealing of property from different owners at the same time and at the same place constitutes but one larceny.'" *Cabbell,* 252 N.W.2d at 453 (quoting Daniel H. White, Annotation, *Single or Separate Larceny Predicated Upon Stealing Property from Different Owners at the Same Time,* 37 A.L.R.3d 1407, 1410 (1971)). We refused to apply this rule in *Cabbell* where the defendant had shoplifted items from two different owners at two different locations on the same day.

We applied the following principle instead: "[I]t is well settled that if, on the same expedition, there are several distinct larcenous takings, as the taking of the goods of one person at one place, and afterward the taking of the goods of another person at another place, and so on, as many crimes are committed as there are several and distinct takings, and this is true although the thefts may all have been committed in

rapid succession and in pursuance of a formed design to steal."

*Cabbell,* 252 N.W.2d at 453 (quoting 50 Am. Jur.2d *Larceny* § 3, at 154–55 (1970)). We reach the same conclusion here. Although Chrisman stole money from the same owner, the difference in location and the necessity to break into two separate buildings support Chrisman's conviction of two thefts.

III. *Motion to Suppress Evidence.*

Chrisman filed a motion to suppress the shoes taken from Damiano's apartment. He argued that the shoes were seized in violation of the Fourth Amendment to the United States Constitution. The State justifies the seizure under the plain view doctrine.

Review of a lower court's ruling on the validity of a seizure under the plain view doctrine is de novo. *State v. Oliver,* 341 N.W.2d 25, 32 (Iowa 1983). Our review is based on our independent evaluation of the relevant circumstances appearing in the record. *State v. Campbell,* 326 N.W.2d 350, 352 (Iowa 1982).

■ A. *Error preservation.* The State argues that Chrisman failed to preserve error on this issue because he did not request the district court to make a specific ruling on the lawfulness of the seizure. We reject the State's contention and find that error was preserved.

In his motion to suppress, Chrisman challenged only the lawfulness of the seizure of his tennis shoes, not the search which led to their discovery. The district court ruled that the "searches made herein were consensual" and denied Chrisman's motion. The State may believe that the trial court's analysis was inadequate in focusing only on the search in determining the propriety of the seizure. Nevertheless, the court ruled on the issue presented by the motion. Consequently, error was preserved. *Cf. Sullivan v. Chicago & Northwestern Transp. Co.,* 326 N.W.2d 320, 325 (Iowa 1982) (error not preserved where no ruling made on motion).

■ B. *Lawfulness of seizure.* Chrisman argues that the officers had no probable cause to justify the seizure of his shoes, even though they were in plain view. The State

first asserts that there was probable cause for the seizure. In the alternative the State contends that the admission of the evidence was harmless error. Because we agree that there was probable cause for the seizure of the tennis shoes, we do not address the question of harmless error.

■ The plain view doctrine is an exception to the Fourth Amendment warrant requirement. *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *State v. Oliver,* 341 N.W.2d 744, 745 (Iowa 1983). Under this exception the seizure of an object found in plain view is justified if two conditions are met: (1) the intrusion of the police was lawful, and (2) the incriminating nature of the object was immediately apparent. *Horton v. California,* 496 U.S. 128, 136, 110 S.Ct. 2301, 2308, 110 L.Ed.2d 112, 123 (1990). The burden is on the State to prove the applicability of the plain view exception. *Oliver,* 341 N.W.2d at 745.

Chrisman does not challenge the State's showing that the search of Damiano's apartment and the examination of Chrisman's tennis shoes were consensual. Therefore, the first requirement for the plain view exception to the warrant requirement is met. However, Chrisman does argue the State has failed to prove the second requirement—that the incriminating nature of the tennis shoes was immediately apparent.

We believe the State met its burden to prove that the incriminating nature of the tennis shoes was immediately apparent to the investigating officers. A footprint found by the safe in one of the Farm Service buildings was identified as made by an Adidas brand tennis shoe. The officers knew that a vehicle parked in the vicinity of the Farm Service property near the time of the burglaries belonged to Damiano.

These background facts made the incriminating nature of the Adidas shoes found in Damiano's apartment immediately apparent to the officers. We conclude that the seizure of Chrisman's shoes was justified by the plain view exception to the Fourth Amendment warrant requirement.

## IV. *Impact of Section 4.13 on Sentencing.*

■ Chrisman argues that Iowa Code section 4.13 requires that he be sentenced for the theft and burglary charges under amended Code sections which would reduce his terms of imprisonment. Section 4.13 contains an ameliorative amendment clause which states:

> If the penalty, forfeiture, or punishment for any offense is reduced by a re-enactment, revision, or amendment of a statute, the penalty, forfeiture, or punishment if not already imposed shall be imposed according to the statute as amended.

For purposes of section 4.13 a penalty is "imposed" at the time of sentencing. *State v. Marvin,* 307 N.W.2d 10, 12 (Iowa 1981). Chrisman was sentenced in October 1992. The amended theft and burglary statutes were effective on July 1, 1992. Therefore, if the amended statutes reduce the punishment for his offenses, section 4.13 applies. *State v. Bousman,* 278 N.W.2d 15, 16 (Iowa 1979).

In February 1992 when Chrisman broke into the Farm Service buildings, his actions were deemed burglary in the second degree. Iowa Code § 713.5 (1991). Burglary in the second degree was a class "C" felony. *Id.* Under the amended burglary statute Chrisman's act of breaking into an unoccupied structure is burglary in the third degree, a class "D" felony. 1992 Iowa Acts ch. 1231, § 61 (codified at Iowa Code § 713.6A (1993)).

As a class "C" felony the maximum sentence for second-degree burglary under the 1991 statute was ten years. Iowa Code § 902.9(3) (1991). The maximum sentence for the same criminal conduct reclassified as a class "D" felony under the amended statute is five years. Iowa Code § 902.9(4) (1993).

Similar changes were made in the theft statute. The degrees of theft were altered so that the same conduct is punished less severely under the amendment. In February 1992 the theft of property exceeding $100 but not exceeding $500 was classified as theft in the third degree, an aggravated misdemeanor. Iowa Code § 714.2(3) (1991). However, under the amended theft statute, the theft of property exceeding $100 but not exceeding $500 is deemed theft in the fourth degree, a serious misdemeanor. 1992 Iowa Acts ch. 1060, § 1 (codified at Iowa Code § 714.2(4) (1993)). As a result of this change in the degrees of theft, the maximum sentence under the amended statute for the criminal acts that Chrisman was found to have committed is reduced from two years to one year.

Chrisman contends that these amendments have the effect of reducing the punishment for his criminal conduct. The State responds that the amendments redefine the crimes of theft in the third degree and burglary in the second degree but do not change the punishment for these crimes. Therefore, the State argues, section 4.13 does not apply.

In *State v. Austin,* 503 N.W.2d 604 (Iowa 1993), we considered section 4.13 in the context of a theft conviction. In *Austin,* the defendant was found guilty of third-degree theft, an aggravated misdemeanor. The amendments to the theft statute described above became effective prior to Austin's sentencing. However, the district court sentenced Austin under the old law, resulting in a longer sentence.

The State argued in *Austin* that the amended statute did not affect the penalty for third-degree theft but merely changed an element of the offense. *Austin,* 503 N.W.2d 604, 605 (Iowa 1993). We concluded that the value of the stolen property under the theft statute was an "element" used to determine punishment. *Id.* at 606. Consequently, we held that section 4.13 required that the defendant be sentenced under the amended statute.

The State urges us to limit or abandon our holding in *Austin.* Upon reconsidering it, we now decide to revise the test we employed in *Austin* in favor of a broader interpretation of the statute that more nearly reflects the legislature's intent in including an ameliorative amendment clause in section 4.13. Our analysis begins with a review of the pertinent principles of statutory construction.

■ In construing a statute the court attempts to identify the legislature's intent and give effect to that intent. *Coker v. Abell–*

*Howe Co.*, 491 N.W.2d 143, 152 (Iowa 1992). To determine legislative intent we consider (1) the language of the statute; (2) the objects sought to be accomplished; (3) the evils sought to be remedied; and (4) a reasonable construction that will effectuate the statute's purpose rather than one that will defeat it.

*State v. Green*, 470 N.W.2d 15, 18 (Iowa 1991). Additionally, an ameliorative provision should be interpreted liberally so as to apply to every case in which it can properly apply. *See id.* (remedial statute should be liberally construed); *State v. Wiese*, 201 N.W.2d 734, 737 (Iowa 1972) (ameliorative change in penal law should be extended to every proper case).

The language of the statute shows that section 4.13 was intended to give a defendant who had not yet been sentenced the benefit of a reduced punishment enacted after the commission of the offense. Once the legislature has determined that certain conduct warrants a less severe punishment, section 4.13 ensures that the outdated and harsher penalty is no longer imposed. *See State v. Flagg*, 624 A.2d 864, 866 (Vt.1993). Even in the absence of a provision such as section 4.13, several courts have found a similar legislative intent in the statute mitigating punishment. *E.g., In re Estrada*, 63 Cal.2d 740, 48 Cal.Rptr. 172, 175, 408 P.2d 948, 951 (1965) (en banc); *State v. Clark*, 391 So.2d 1174, 1176 (La.1980); *People v. Oliver*, 1 N.Y.2d 152, 151 N.Y.S.2d 367, 373–74, 134 N.E.2d 197, 202 (1956); *State v. Macarelli*, 118 R.I. 693, 375 A.2d 944, 947 (1977).

We now turn to an examination of the State's position to determine whether the State's desired interpretation of section 4.13 effectuates the legislature's intent. The State would limit the application of section 4.13 to those instances where the legislature has directly changed the punishment for a specified crime. In other words, under the State's interpretation of the statute, a defendant would benefit from a reduction of the maximum sentence for second-degree burglary from ten to five years. However, if the legislature instead reclassified the conduct constituting second-degree burglary so that under the amendment the same conduct was classified as third-degree burglary, the amendment would not benefit a defendant even though a result of the amendment is that the same criminal act is now punished less severely.

We believe that such a strict interpretation of the ameliorative amendment clause does not further the legislature's purpose in enacting section 4.13. There are many ways to reduce the penalty for a specific criminal act, only one of which is to directly change the punishment. The punishment can just as effectively be mitigated by redefining a crime so that the same conduct now falls within a less severely punished offense. Note, *Today's Law and Yesterday's Crime: Retroactive Application of Ameliorative Criminal Legislation*, 121 U.Pa.L.Rev. 120, 139 (1972). Section 4.13 should apply whether the reduction in punishment is accomplished directly or indirectly. *See People v. Cloud*, 1 Cal. App.3d 591, 81 Cal.Rptr. 716, 721–22 (1969); *State ex rel. Abrogast v. Mohn*, 164 W.Va. 6, 260 S.E.2d 820, 824 (1979).

In determining whether section 4.13 applies here, we focus on whether the same prohibited conduct is punished less severely under the amended statute. In this case, as in *Austin*, the defendant's prohibited conduct was theft of property exceeding $100 in value but not exceeding $500 in value. Under the amended theft statute such conduct is punished less severely. Therefore, section 4.13 applies and the amended statute allowing a maximum sentence of one year controls Chrisman's sentencing on the theft convictions. Because the district court sentenced Chrisman under the former statute which permitted a maximum sentence of two years, we vacate the sentences entered on Chrisman's theft convictions and remand for resentencing.

Section 4.13 is also applicable to the sentences on Chrisman's burglary charges. The prohibited conduct, breaking into an unoccupied building, is punished less severely under the amended statute. Therefore, Chrisman should have been sentenced under that statute.

Chrisman also argues that he should have been convicted of burglary as a class "D"

felony rather than as a class "C" felony. However, section 4.13 is not that broad. It gives a defendant the benefit of a more lenient sentence; it does not require that the characterization of the crime of which he is convicted be changed. *See State ex rel. Abrogast v. Mohn,* 260 S.E.2d at 823.

Although Chrisman should have been sentenced under the amended burglary statute, there was no prejudicial error. Chrisman was adjudicated an habitual offender, a determination he does not challenge. Consequently, he was sentenced as an habitual offender to an indeterminate term not to exceed fifteen years. *See* Iowa Code §§ 902.8, 902.9 (1991). The amendments to the burglary statute do not affect Chrisman's sentencing as an habitual offender. Therefore, his sentences for the second-degree burglary counts are affirmed. *See State v. Sumpter,* 438 N.W.2d 6, 9 (Iowa 1989) (improper consideration of victim impact statements did not require vacation of sentence where defendant was not prejudiced).

### V. *Summary.*

Section 714.3 does not require that Chrisman be charged with one theft instead of two. Moreover, the single larceny rule does not apply under the facts of this case.

The district court correctly concluded that the seizure of Chrisman's tennis shoes did not violate the Fourth Amendment. Consequently, the court did not err in overruling Chrisman's motion to suppress.

Section 4.13 requires that Chrisman be sentenced under the reduced penalties contained in the amendments to the theft and burglary statutes. We vacate the sentences entered on Chrisman's convictions of two counts of third-degree theft and remand for resentencing. Because the failure to consider the amendments to the burglary statute in sentencing Chrisman on his convictions of two counts of second-degree burglary did not affect his sentencing as an habitual offender, those sentences are affirmed.

CONVICTIONS AFFIRMED; SENTENCES ON BURGLARY CONVICTIONS AFFIRMED; SENTENCES ON THEFT CONVICTIONS VACATED AND CASE REMANDED FOR RESENTENCING.