MANSFIELD, Justice
(concurring in part and dissenting in part).
I agree with the majority’s overall approach, which involves parsing the statutes to determine the unit of prosecution. However, when the general assembly enacted our present criminal code, it was writing against the background of the single-larceny rule. Apparently, it intended to perpetuate that rule, or so we have indicated in prior cases. When I apply that rule, I find only one theft or intended theft, and thus only one robbery, despite the existence of two separate assaults. I therefore would reverse the second robbery conviction.
As the majority notes, to determine the unit of prosecution, we first need to examine the legislative definition of robbery. *453 See Iowa Code § 711.1 (2009). When one reads that definition, the unit of prosecution appears to be an intended theft coupled with one or more assaults. See id. (“A person commits a robbery when, having the intent to commit a theft, the person does any of the following acts to assist or further the commission of the intended theft .... ” (Emphasis added.)).
Copenhaver assaulted both tellers, so the question for me is whether there was one intended theft or two. If two, he can be convicted of two separate robberies. If there was only one intended theft, then only one robbery can follow.
This leads me to the legislative definition of theft. See id. § 714.1(1). Again, I agree with the majority’s approach here. As noted by the majority, a theft occurs when a person “[tjakes possession or control of the property of another, or property in the possession of another, with the intent to deprive the other thereof.” Id.
Under this somewhat imprecise legislative definition, one might conclude that taking money from two bank tellers working in the same room could be considered two different thefts, and hence two different intended thefts.[3]
However, we have applied the rule of lenity when the unit of prosecution is ambiguous:
Where the language of a criminal statute leaves an ambiguity with respect to the unit of prosecution, courts apply the rule of lenity: in cases of ambiguity or doubt as to legislative intent, only one offense may be charged.
State v. Kidd, 562 N.W.2d 764, 765 (Iowa 1997); see also State v. Muhlenbruch, 728 N.W.2d 212, 216 (Iowa 2007) (“[T]his court has recognized that strict construction of criminal statutes should be applied in cases where there is doubt regarding the allowable unit of prosecution.”).[4]
More importantly, with theft, we have to deal with the historical “single-larceny rule” in this state. Before the current definition of “theft” was adopted as part of the 1976 criminal code revision, see 1976 Iowa Acts ch. 1245, ch. 1, § 1401 (codified at Iowa Code § 714.1(1979)), we had the crime of “larceny.” Under the longstanding definition of larceny in this state, that crime occurred when a person stole, took, *454 and carried away property of another. See, e.g., Iowa Code § 2612 (1851) (“If any person steal, take and carry away, of the property of another, any money, goods, or chattels.... ”).
In applying this definition of larceny, we found that “[t]he stealing of several articles at the same time and in the same act from the same person constitutes but one transaction, and is one act of larceny.” State v. Broderick, 191 Iowa 717, 718-19, 183 N.W. 310, 311 (Iowa 1921). Broderick described an easy case, but we also found a single larceny on other occasions. For example, in State v. Vandewater, we upheld a jury determination that the defendant’s theft of fencing materials from a single location constituted “a single transaction or single larceny,” even though the defendant had to make two distinct trips or “asportations” to remove all the materials. 203 Iowa 94, 99, 212 N.W. 339, 342 (Iowa 1927).
In State v. Sampson, the defendant stole a watch from one roommate and $42 from another while both were sleeping. 157 Iowa 257, 258, 138 N.W. 473, 473 (Iowa 1912). Nevertheless, we held the state could only prosecute one larceny. Id. at 263, 138 N.W. at 475. “That an instant or several minutes may have intervened between seizing the watch and the purse can make no difference if these were a part of the same transaction wherein the accused carried out his design of stealing these articles.” Id. at 259, 138 N.W. at 473. We discussed the single-larceny rule in 1977, following the enactment of the new criminal code and before the new code had taken effect. We did not suggest the new code had changed anything. See State v. Cabbell, 252 N.W.2d 451, 452-53 (Iowa 1977) (holding that shoplifting from two separate department stores did not amount to a single larceny because of “the differences in owners, locations and times”).
In fact, despite the changeover from the classic definition of “larceny” to the new crime of “theft” in the 1976 criminal code revision, we have continued to recognize the single-larceny rule. Thus we reiterated in 1981 that “ ‘[wjhere several articles are stolen from the same owner at the same time and place, only a single crime is committed.’ ” State v. Amsden, 300 N.W.2d 882, 884 (Iowa 1981) (quoting 52A C.J.S. Larceny § 53, at 479 (1968)). We declined to apply the single-larceny rule in 1983 to a theft of a tractor and a trailer, but only because the statute “provid[ed] otherwise,” that is, the legislature had defined theft of a motor vehicle as a separate crime. State v. Parker, 342 N.W.2d 459, 462 (Iowa 1983). We also recognized the rule but declined to apply it in 1994 to thefts from two separate buildings. State v. Chrisman, 514 N.W.2d 57, 59-60 (Iowa 1994).
One might argue that section 714.3— also part of the 1976 revision — was intended to displace the single-larceny rule. Section 714.3 provides:
If money or property is stolen from the same person or location by two or more acts, or from different persons by two or more acts which occur in approximately the same location or time period, or from different locations by two or more acts within a thirty-day period, so that the thefts are attributable to a single scheme, plan, or conspiracy, these acts may be considered a single theft and the value may be the total value of all the property stolen.
Iowa Code § 714.3 (2009).
However, in Chrisman, we held that section 714.3 conferred on the state “a power, not a duty,” and then proceeded to separately consider the single-larceny rule. Chrisman, 514 N.W.2d at 59-60. By doing so, we implicitly recognized that section *455 714.3 did not dispense with the single-larceny rule. Notably, section 714.3 sweeps much more broadly than the single-larceny rule and allows the state to aggregate, for example, removals of property from more than one location.[5]
I think the present case falls within the single-larceny rule.[6] Copenhaver obtained cash by going successively to two different teller windows in one room of the bank. Ask the question this way: If Copenhaver had simply been able to pick up the cash from the two different windows without putting anyone in fear, would there have been one theft or two? I think the answer is one.
Because I find only one intended theft occurred here, I cannot sustain the second robbery conviction. I do not claim originality for my position. I find helpful and persuasive much of the reasoning of the judge on the court of appeals who dissented in part. His opinion also cites to a number of out-of-state decisions that reach the same conclusion as we do. See, e.g., State v. Franklin, 130 S.W.3d 789, 796 (Tenn.Crim.App.2003) (finding only one robbery where defendants committed a single theft from a market, albeit from the presence of two persons, because Tennessee’s robbery statute is “defined in terms of‘theft’”).
At the same time, I believe the out-of-state opinions cited by the majority are distinguishable. The Massachusetts case, Commonwealth v. Levia, does not involve a “similar statute.” See 385 Mass. 345, 431 N.E.2d 928, 930 (1982). Massachusetts law provides that a robbery occurs when a person “assaults another and robs, steals or takes from his person money or other property which may be the subject of larceny.” Id. at 930 n. 2. Thus, it defines robbery as an assault plus a taking from the person assaulted, not as an intended theft involving one or more assaults. As the Massachusetts Supreme Judicial Court stated, “In construing the armed robbery statute, this court has previously stressed the assault aspect of the crime.” Id. at 930.
Brown v. State, the Florida case, arguably involves a statute where the unit of prosecution is a taking rather than an assault. See 413 So.2d 1273, 1274 (Fla.Ct.App.1982), aff'd, 430 So.2d 446 (Fla.1983). However, as one reads the Florida Supreme Court’s opinion, it seems clear Florida does not follow a single-larceny rule like Iowa’s. See Brown, 430 So.2d at 447.
Nevada defines robbery as “the unlawful taking of personal property from the person of another, or in the person’s presence, against his or her will, by means of force or violence or fear of injury, immediate or future, to his person or property.” See Nev.Rev.Stat. Ann. § 200.380(1) (West, Westlaw current through 2013 Reg. Sess.). This is a victim-based statute. Thus, it is logical in Nevada to treat the number of victims as the unit of prosecution. See Klein v. State, 105 Nev. 880, 784 P.2d 970, 973 (1989) (per curiam). Iowa does not have that kind of statute.
California — like Nevada — has a statute that appears to make the victim the unit of prosecution. It defines robbery as “the felonious taking of personal property in the possession of another, from his person *456 or immediate presence, and against his will, accomplished by means of force or fear.” See People v. Scott, 45 Cal.4th 743, 89 Cal.Rptr.3d 213, 200 P.3d 837, 840 (2009) (internal quotation marks omitted). Hence, the California Supreme Court understandably reasoned that robbery is a crime of violence “committed against a person.” Id. at 840-41.
Finally, Colorado’s somewhat cryptic robbery statute provides that “[a] person who knowingly takes anything of value from the person or presence of another by the use of force, threats, or intimidation commits robbery.” See People v. Borghesi, 66 P.3d 93, 98 (Colo.2003) (internal quotation marks omitted). In Borghesi, the Colorado Supreme Court found the statutory language not especially helpful and thus declined to follow a unit of prosecution analysis. Id. at 98 n. 5. Instead, it drew upon “the common law emphasis on the assaultive nature of the crime.” Id. at 99-103. I agree with the majority that we can and should follow a unit of prosecution approach in Iowa.
In short, the main thing these cases establish is that state laws differ from each other and one ought, to read and construe every state’s robbery statute on its own. None of the foregoing states follows Iowa’s approach of defining robbery in terms of an intended theft plus “any” of the following conduct in furtherance of “the” intended theft.
For these reasons, I respectfully dissent in part.
WATERMAN, J., joins this concurrence in part and dissent in part.

. Of course, the State did not prosecute the case that way. It charged Copenhaver with only a single theft from the bank and argued there were two robberies because there were two assaults. The majority properly rejects the notion that the unit of prosecution is the number of assaults, rather than the number of intended thefts.

. In State v. Velez, which I joined, we took the position that the lengthy discussion of the “rule of lenity” in State v. Hearn had overruled prior precedent and limited that rule to situations where there was " 'grievous ambiguity’ " in a statute and " ‘no [other] basis for choosing among plausible interpretations of a statute.' ” See State v. Velez, 829 N.W.2d 572, 585 (Iowa 2013) (quoting State v. Hearn, 797 N.W.2d 577, 585-87 (Iowa 2011)). As I reread Hearn, I do not believe the extensive discussion of the rule of lenity therein actually reached that conclusion. In fact, the only conclusion we seem to have reached in Hearn is that “the rule of lenity does not apply if there is no ambiguity regarding the application of a statute to a given set of facts after examination of the text, the context of the statute, and the evident statutory purpose as reflected in the express statutory language.” Hearn, 797 N.W.2d at 587. Notably, we have more recently indicated that “[w]e adhere to the rule of lenity, which guides us to resolve ambiguities in criminal statutes in favor of the accused.” State v. Hagen, 840 N.W.2d 140, 146 (Iowa 2013).
Regardless, I continue to believe Velez was correctly decided, particularly in light of the minutes of testimony indicating the defendant had inflicted two or more separate blows, each of which caused a separate serious injury. See 829 N.W.2d at 583-84.

. As noted by the majority, one treatise claims that Iowa has rejected the single-larceny rule. See 4 Robert R. Rigg, Iowa Practice: Criminal Law § 11:46, at 413 (2013). However, that treatise cites only to Chrisman, and I do not think Chrisman supports that conclusion.

. The majority correctly points out that Co-penhaver has not discussed the single-larceny rule in his briefing. However, Copenhaver vigorously contends that there was only one intended theft and hence only one robbery. The single-larceny rule is the reason why.