# IN THE SUPREME COURT OF IOWA

No. 11–0472

Filed April 12, 2013

**STATE OF IOWA,**

Appellee,

vs.

**VALENTIN VELEZ,**

Appellant.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Pottawattamie County, Richard H. Davidson, Judge.

The State seeks further review from a court of appeals decision which vacated the defendant's sentence on one of two counts of willful injury causing serious injury and remanded to the district court for further proceedings. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Stephan J. Japuntich, Assistant State Appellate Defender, and Matthew Shimanovsky, Student Intern, for appellant.

Thomas J. Miller, Attorney General, Martha E. Trout, Assistant Attorney General, Matthew D. Wilber, County Attorney, and Jon J.

Jacobmeier and Amy L. Zacharias, Assistant County Attorneys, for appellee.

**ZAGER, Justice**.

Valentin Velez was charged by trial information with one count of robbery in the first degree, in violation of Iowa Code sections 711.1, 711.2, and 714.1 (2009), and one count of willful injury causing serious injury, in violation of Iowa Code section 708.4(1). These charges both stemmed from a single incident involving a single victim. Pursuant to a plea agreement with the prosecutor, Velez entered pleas of guilty to two counts of willful injury causing serious injury. The district court accepted the pleas after a reported proceeding. On appeal, a divided court of appeals found that there was not a sufficient factual basis in the record to support a second independent charge of willful injury causing serious injury. The court of appeals thus vacated one of the willful injury convictions. The State requested further review, which we granted. Upon our de novo review, we conclude the record established an independent factual basis for the second charge. Thus, we vacate the decision of the court of appeals and affirm the judgment of the district court.

## I.  Factual Background and Procedural History.

On February 17, 2011, Valentin Velez entered pleas of guilty to two counts of willful injury causing serious injury. At that time, he waived his right to file a motion in arrest of judgment and waived his right to have a presentence investigative report prepared and considered by the court. Both the State and Velez requested immediate sentencing, and Velez was sentenced in that same hearing. Velez filed a timely appeal on March 18, 2011, challenging one of the two convictions. Velez alleged that no factual basis existed for the district court to find him guilty on both counts of willful injury, as the two convictions arose from a single incident involving a single victim. The court of appeals found that the

record in its current state was not sufficient to show a factual basis for two separate assaults. It thus vacated one of the sentences imposed and remanded the case to the district court. It directed the district court to allow the State an opportunity to supplement the record in order to provide a sufficient factual basis for the vacated sentence. We agreed to hear the case on further review.

In the early morning hours of July 5, 2010, Valentin Velez and Jared Welsh forcibly entered the home of Tracee Crawford. Shawn Kennedy was sleeping on the couch. Velez was armed with a twelve-inch metal pole. He removed a baseball bat from a bracket in Crawford's home and handed it to Welsh. Velez claimed Kennedy owed him $500, presumably from a drug transaction. Velez repeatedly demanded the money from Kennedy while striking Kennedy approximately twenty to forty times with the metal pole. The attack lasted approximately five to ten minutes. Ultimately, Welsh sprayed mace in the room, as he thought the attack was "getting out of hand" and wanted to stop it. To escape the mace, both Velez and Welsh left Crawford's home. Kennedy sustained multiple injuries from the attack, including a broken left forearm, broken right forearm, and broken bones in his hand. He also sustained an injury to his leg. Additional facts will be discussed later, as necessary.

## II. Standard of Review.

Generally, we review challenges to guilty pleas for the correction of errors at law. *State v. Ortiz*, 789 N.W.2d 761, 764 (Iowa 2010). However, Velez claims his trial counsel was ineffective for allowing him to enter a guilty plea without a factual basis. Velez also claims his counsel was ineffective in assisting him based on double jeopardy grounds. Due to their constitutional dimensions under both the State and Federal

Constitutions, we review claims of ineffective assistance of counsel de novo. *Ennenga v. State*, 812 N.W.2d 696, 701 (Iowa 2012).

### III. Ineffective Assistance of Counsel.

Generally, ineffective-assistance-of-counsel claims are decided in postconviction relief proceedings. *State v. Bearse*, 748 N.W.2d 211, 214 (Iowa 2008). However, claims may be decided on direct appeal if the record is adequate to decide the claim. *Id.*

An appellant who makes a claim of ineffective assistance of counsel must satisfy a two-pronged test. *Ennenga*, 812 N.W.2d at 701. The appellant must demonstrate by a preponderance of the evidence that "(1) counsel failed to perform an essential duty, and (2) prejudice resulted." *Id.* (citation and internal quotation marks omitted).

> Defense counsel violates an essential duty when counsel permits defendant to plead guilty and waive his right to file a motion in arrest of judgment when there is no factual basis to support defendant's guilty plea. Prejudice is presumed under these circumstances.

*Ortiz*, 789 N.W.2d at 764–65 (citations omitted). Thus, in order to determine if Velez's counsel violated an essential duty resulting in prejudice to Velez, we must determine if there is a factual basis to support his guilty plea.

### IV. Factual Basis.

**A. Factual Basis Required for Guilty Plea.** A factual basis is required for a guilty plea. *State v. Schminkey*, 597 N.W.2d 785, 788 (Iowa 1999). In evaluating whether a factual basis exists to support a guilty plea, we may examine "the minutes of testimony, statements made by the defendant and the prosecutor at the guilty plea proceeding, and the presentence investigation report." *State v. Keene*, 630 N.W.2d 579,

581 (Iowa 2001). Velez waived the presentence investigation.[1] Thus, we look primarily to the minutes of testimony and the statements made by the defendant and the prosecutor at the guilty plea proceeding to determine whether the State established a factual basis for the second willful injury charge. *See id.* We note that the "record does not need to show the totality of evidence necessary to support a guilty conviction, but it need only demonstrate the facts that support the offense." *Ortiz*, 789 N.W.2d at 768.

**B. Disputed Factual Basis.** Velez contends the State did not present sufficient evidence to provide a factual basis for conviction on two discrete counts of willful injury under Iowa Code section 708.4. This section provides,

> Any person who does an act which is not justified and which is intended to cause serious injury to another commits the following:
>
> 1. A class "C" felony, if the person causes serious injury to another.
>
> 2. A class "D" felony, if the person causes bodily injury to another.

Iowa Code § 708.4. The legislature also defined "serious injury" as follows:

> 1. "*Serious injury*" means any of the following:
>
> *a.* Disabling mental illness.

---

[1] Velez does not argue that his waiver of the presentence investigation report violated his rights. Indeed, we note our Iowa Rules of Criminal Procedure "authorize[] the waiver of the use of a [presentence investigation] report where a plea agreement is conditioned upon the court's concurrence." *Campbell v. State*, 576 N.W.2d 362, 364 (Iowa 1998). However, a "defendant's waiver of the use of a [presentence investigation] report [must be] knowing and voluntary," and the district court must "ensure that the defendant is aware the report could contain favorable information which could result in a lesser sentence." *Id.* Since Velez makes no argument suggesting his attorney's waiver of the presentence investigation report constituted ineffective assistance of counsel, we need not analyze the issue further.

*b.* Bodily injury which does any of the following:

(1) Creates a substantial risk of death.

(2) Causes serious permanent disfigurement.

(3) Causes protracted loss or impairment of the function of any bodily member or organ.

*c.* Any injury to a child that requires surgical repair and necessitates the administration of general anesthesia.

2. "*Serious injury*" includes but is not limited to skull fractures, rib fractures, and metaphyseal fractures of the long bones of children under the age of four years.

*Id.* § 702.18.

Velez concedes that Kennedy suffered multiple injuries that, separately, would constitute "serious injury" as prohibited by the willful injury statute and defined by Iowa Code section 702.18. The minutes of testimony of the doctor who examined Kennedy establish the extent of his injuries.

> This witness will testify that on July 5, 2010, he treated Shawn Kennedy for injuries he suffered as a result of this incident. He will testify as to the extent of Kennedy's injuries. Kennedy suffered the following, but not limited to, scalp laceration, right distal ulnar fracture, right fourth and fifth metacarpal fracture, and left proximal ulnar fracture.

Thus, the fighting issue is a narrow one—whether Velez committed two "acts" causing serious injury. Unfortunately, the record is largely silent on details of the attack. According to the minutes of testimony, no direct eyewitnesses existed beyond the victim and the accomplice. Two third-party witnesses, Tracee Crawford and Jamie Bell, were present when Velez and Welsh entered Crawford's home. Crawford's minutes of testimony suggest that Bell may have witnessed the attack. Her minutes state that Bell "was laying on the back couch watching [the attack] and it lasted five to ten minutes." However, Bell's minutes of testimony indicate he did not actually witness the event. Rather, the minutes indicate he

witnessed Velez and Welsh enter the home, but nothing else. Bell stated he opened the door for Velez and Welsh when he was still "half asleep." Velez and Welsh "shoved their way in" past him. Rather than follow Velez and Welsh into the room where Kennedy was sleeping on the couch, Bell stated he "had a feeling to stay out of there so he got his computer and ran out the door." His minutes of testimony provide no information regarding the scope of the attack.

The other third-party witness, Crawford, had fallen asleep on the couch beside Kennedy prior to the appearance of Velez and Welsh. Crawford woke up and saw Velez and Welsh standing over Kennedy. Her minutes say "[s]he looked at Velez and said, 'No' and he gave her a look like 'get out of the way,' so she grabbed her phone and went and hid near the water heater" in a closet in an adjoining room. She claims she could not see the attack from that vantage point. She only heard Kennedy screaming and saying, "Stop," and "Leave me alone."

The victim was a reluctant witness. His minutes of testimony consist of only a short paragraph and do not even mention the metal pole reportedly used by Velez in the attack. With the exception of identifying information, these minutes are reproduced in their entirety:

> [Kennedy] will testify that on July 5, 2010, he was at the above-mentioned residence, along with Tracee Crawford. He will testify as to his observations regarding this matter. He will testify that he was assaulted by two males later identified as Valentin Velez AKA Vincent Velez and Jarred Welsh. He will testify that he was struck by a baseball bat about his body. He will testify that he suffered injuries, including, but not limited to two broken arms. He will testify as to the extent of his injuries. He will identify Velez. Further, this witness will testify as to other matters relevant hereto.

Velez's own prehearing statements reveal little more. After the attack, Velez made some statements to his girlfriend. He also sent her a

letter. According to her minutes of testimony, Velez "told her that he beat up [Kennedy] really bad and that he used a baseball bat and almost broke his knee caps. When she asked [Velez] if [Kennedy] was okay, [Velez] said he almost killed [Kennedy]." Velez provided no other statements or testimony relevant to our analysis prior to the guilty plea proceedings. Rather, Velez's statements are relevant only to demonstrate that Velez had been the perpetrator and to aid the court in determining the extent of Kennedy's injuries.

We may also examine the "statements made by the defendant and the prosecutor at the guilty plea proceeding" to determine whether the record, "as a whole, . . . disclose[s] facts to satisfy the elements of the crime." *Keene*, 630 N.W.2d at 581. The district court directed Velez to:

> Tell me in your own words what you did to commit willful injury in Count I—causing injury that you're pleading to. The two counts are identical, so what I need to know is what you did to commit the first one, and I'm going to ask you the same questions on the second one and may be a similar instance, but I need to know in your own words what happened so I can determine whether there's a factual basis for this plea or not. So tell me in your own words what you did to commit the willful injury causing serious injury.

Before Velez could answer, Velez's attorney prefaced Velez's answer with an acknowledgment of the medical testimony that would establish that Kennedy had suffered multiple serious injuries as a result of the attack. The prosecutor supplemented the record with additional discussion of Kennedy's injuries. The district court then proceeded to question Velez. Velez acknowledged that he had "an altercation" with Kennedy, that Kennedy sustained multiple injuries, and that Velez had reviewed the minutes of testimony and believed that a jury could find that Velez had "committed those injuries." Nonetheless, Velez offered no statement at the guilty plea proceeding that detailed the attack.

Based on our de novo review of the entire record as outlined herein, we find a sufficient factual basis to conclude that Kennedy sustained multiple serious injuries as defined by Iowa Code section 702.18. The remaining issue, then, is whether Velez committed multiple acts as defined by Iowa Code section 708.4. To make that determination, the State must provide the court with sufficient detail to allow the court to determine that Velez committed multiple, discrete acts in the course of that attack.

The only detail regarding what occurred during the attack came from Welsh, Velez's accomplice. Thus, our analysis will center on whether Welsh's minutes of testimony provide the requisite factual basis to determine if Velez committed multiple acts within the meaning of Iowa Code section 708.4. The relevant portions of Welsh's minutes of testimony are reproduced below.

> There were several bats there and Velez displayed a 12-inch metal pole that he had with him. He handed Welsh a bat. Velez then struck Kennedy in the leg with the metal pole. Velez continued to strike Kennedy several times while saying "Give me my money" continuously. . . . Velez continued to strike Kennedy about his legs and upper body with the metal pole. . . . [After Kennedy dropped a lighter which appeared to be a handgun]. . . Velez continued to hit Kennedy and he was screaming. Welsh will testify that Velez struck Kennedy 20 to 40 times. . . . Velez was patting Kennedy down for money and found a knife. Velez took the [lighter] and the knife, but found no money. Welsh will testify that he had brought mace with him from his mom's car. He thought that it was getting out of hand so he sprayed the area with mace to get out of there.

**V. Legislative Intent.**

**A. Legislative Intent Key to Factual Basis Analysis**. The key question we must decide with respect to whether the district court had a sufficient factual basis to find Velez guilty on both counts of willful injury is legislative intent.

**B. Unit of Prosecution.** We routinely look to statutory language to determine what the legislature intended as a "unit of prosecution" for a particular crime. *E.g., State v. Muhlenbruch*, 728 N.W.2d 212, 216 (Iowa 2007) (analyzing the words of the statute to determine whether the unit of prosecution for purposes of possession of a computer containing pornographic materials involved the number of computers or the number of pornographic images); *State v. Kidd*, 562 N.W.2d 764, 765 (Iowa 1997) (analyzing the definition of the word "an" as a means of determining legislative intent in defining the unit of prosecution). The wording of the legislature strictly controls our analysis as to the appropriate unit of prosecution, and we have consistently resisted policy arguments in favor of interpreting a statute in a way the legislature did not explicitly intend. *E.g., Muhlenbruch*, 728 N.W.2d at 216 ("Any recasting of the scope of criminal liability . . . is the province of the legislature, not this court."). In *Muhlenbruch*, we reiterated a century-old principal. " 'Criminal statutes are . . . inelastic, and cannot by construction be made to embrace cases plainly without the letter though within the reason and policy of the law.' " *Id.* at 214 (quoting *State v. Lovell*, 23 Iowa 304, 305 (1867)).

However, we recognize the challenges involved with ascertaining legislative intent. Chief Justice Warren articulated this difficulty when trying to evaluate the legislature's intent in situations involving multiple punishments, such as the one we face here.

> The problem of multiple punishment[s] is a vexing and recurring one. . . . [M]urdering two people simultaneously might well warrant two punishments but stealing two one-dollar bills might not. . . .
>
> In every instance the problem is to ascertain what the legislature intended. Often the inquiry produces few if any

> enlightening results. Normally these are not problems that receive explicit legislative consideration.

*Gore v. United States*, 357 U.S. 386, 393–94, 78 S. Ct. 1280, 1285, 2 L. Ed. 2d 1405, 1411 (1958) (Warren, C.J., dissenting).

An analysis of the legislative history of Iowa Code section 708.4 does not produce much useful guidance on the question of unit of prosecution and suggests the legislature did not explicitly consider "unit of prosecution" questions when enacting and amending the statute. The legislature enacted Iowa Code section 708.4 in 1978, as part of a "complete revision of the substantive criminal law." 1976 Iowa Acts ch. 1245(1), § 804. Subsequently, the legislature amended this Code section in 1999. This revision, however, simply expanded the scope of willful injury to include an act which causes "bodily injury," whereas the previous version of the code only punished acts which caused "serious injury." 1999 Iowa Acts ch. 65, § 5 (codified at Iowa Code § 708.4).

Our analysis, then, must hinge solely on the legislature's words relating to "an act," as it is undisputed that the State established a factual basis to support that Velez caused more than one injury qualifying as a serious injury. Thus, we must determine what is "an act" within the context of the willful injury statute.

**C. Determining Legislative Intent for Unit of Prosecution.** As a result, our task consists of determining legislative intent for a question the legislature does not seem to have explicitly considered. Could the unit of prosecution be comprised of a single completed blow resulting in serious injury, or do all blows occurring in an attack on a single victim necessarily constitute a course of conduct, precluding multiple charges for the attack? If the former, the State has proven a factual basis for

both guilty pleas. If the latter, the State has not proven a factual basis, and double jeopardy protection is triggered.

1. *Plain words of the statute.* In construing legislative intent, we look first to see if the legislature has defined the words it uses. *Jack v. P & A Farms, Ltd.*, 822 N.W.2d 511, 515 (Iowa 2012). "If the legislature has not defined words of a statute, we may refer to prior decisions of this court and others, similar statutes, dictionary definitions, and common usage." *Id.* (citation and internal quotation marks omitted). Our analysis centers on what constitutes an act under Iowa Code section 708.4.

In *Kidd*, we laboriously analyzed the meaning of the word "an."

> The statutory language defining the unit of prosecution under section 724.3 is "an offensive weapon." Kidd contends the word "an" is ambiguous. . . . The State asserts the common meaning of the word "an" denotes a singular unit of prosecution for each weapon possessed. We think the State is correct.

> "An" is a euphonic mutation of the article "a." The letter "n" allows an audible distinction to be made between the article "a" and the word it precedes. Consequently, the resolution of this appeal turns on an interpretation of the article "a." "A" is defined as an article which is "used as a function word before most *singular* nouns other than proper and mass nouns when the individual in question is undetermined, unidentified, or unspecified. . . ."

*Kidd*, 562 N.W.2d at 765 (citation omitted) (quoting *Webster's Third New International Dictionary* 1 (1993) (emphasis added)).

Unquestionably, then, the legislature delineated each count as a single act. It is noteworthy that the Model Penal Code defines "act" or "action" as "a bodily movement whether voluntary or involuntary." Model Penal Code § 1.13(2), 10A U.L.A. 90 (2001). Further, we are only required to find minimal support in the record in order to support a factual basis for . . . two separate crimes. *See State v. Walker*, 610

N.W.2d 524, 527 (Iowa 2000) (affirming the defendant's guilty pleas because "the record minimally supports a factual basis for two separate crimes").

2. *Tests for multiple violations.* Courts have used a number of tests in determining what constitutes multiple acts and thus could be considered multiple counts.

a. *Separate-acts test.* The Fifth Circuit has articulated the challenge courts face in determining whether the prosecution may charge multiple violations of the same statute, noting that "identifying the *actus reus* with particularity [is] not always . . . easy." *United States v. Prestenbach*, 230 F.3d 780, 783 (5th Cir. 2000). Nevertheless, the key for the separate-acts test is determining "whether separate and distinct acts made punishable by law have been committed." *Id.* at 784.

Iowa courts have consistently begun their analysis by attempting to determine if the legislature intended for the phrase "an act" to prohibit discrete, individual acts or a continuous course of conduct. Though we do not apply the traditional *Blockburger* elements test in a case where the two crimes charged originate from the same statute, another portion of *Blockburger* does aid our analysis, as it deals with the question of whether multiple charged offenses involving the same statute constitute a single, continuing offense or constitute multiple offenses. *State v. Schmitz*, 610 N.W.2d 514, 516 (2000) (analyzing *Blockburger v. United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932)). We found that this answer is contained within the words of the statute. *Id.* at 516 ("Thus, *Blockburger* requires that the statute at issue be construed to determine the nature of the offense[.]") The *Blockburger* test we identified in *Schmitz* as applying to situations in which the defendant is charged with multiple violations of the same statute " 'is whether the individual

acts are prohibited, or the course of action which they constitute. If the former, then each act is punishable separately . . . . If the latter, there can be but one penalty.'" *Schmitz*, 610 N.W.2d at 516 (emphasis omitted) (quoting *Blockburger*, 284 U.S. at 302, 52 S. Ct. at 181, 76 L. Ed. at 308).

In *Schmitz*, the defendant was charged with three separate counts of theft in the second degree for possessing three different stolen items. 610 N.W.2d at 515. We determined that the fundamental issue of statutory interpretation was whether "the legislature define[d] theft as a continuing offense or as a crime that [was] complete with a single act." *Id.* at 517. Because we found that "[t]he crime of exercising control over stolen property is not a continuing offense for double jeopardy purposes," we further found that the Code "does not proscribe a course of conduct encompassing a series of acts, but rather prohibits a single act of possession of stolen property." *Id.*

The language of this statute contrasts with other statutes in which the legislature has specifically delineated a "course of conduct" as the unit of prosecution. *See, e.g.*, Iowa Code § 708.11(*b*) (defining a "course of conduct" for the offense of stalking). We have also interpreted statutes as delineating "continuing offenses," and the legislature has acknowledged that some crimes are seen as continuing offenses. *See id.* § 802.7 ("When an offense is based on a series of acts committed at different times, the period of limitation prescribed by this division shall commence upon the commission of the last of such acts.")

In accordance with the guidance of the United States Supreme Court, however, we are careful about designating a statute as establishing a continuing offense. *State v. Harrison*, 561 N.W.2d 28, 29 (Iowa 1997) (per curiam) ("The United States Supreme Court has stated

that a particular offense should not be construed as a continuing one 'unless the explicit language of the substantive criminal statute compels such a conclusion, or the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one.' " (Quoting *Toussie v. United States*, 397 U.S. 112, 115, 90 S. Ct. 858, 860, 25 L. Ed. 2d 156, 161 (1970)).). The Supreme Court reasoned that construing crimes to be continuing crimes endangers the defendant's rights. *Id.* Specifically, the passage of time puts the defendant in danger of being unable to obtain evidence for a proper defense. *Id.*

b. *Break-in-the-action test.* We have previously used a break-in-the-action test to determine if separate acts have been committed. In *Walker*, we considered a merger claim where the defendant pled guilty to both willful injury and voluntary manslaughter. *Walker*, 610 N.W.2d at 525–26. Walker argued Iowa Code section 701.9 requiring merger of the two offenses would apply, as the factual basis for each of these crimes hinged on a single offense. *Id.* at 526. We affirmed the findings of the district court.

> [T]he [district] court identified Walker's initial assault on [the victim], the willful injury, during which he threw several swift punches, knocking [the victim] to the ground. The court then found that, instead of stopping the fight right there, Walker's rage so consumed him that he proceeded to kick [the victim] in the head while he was down. This separate act of uncontrolled aggression, resulting in [the victim]'s death, furnished the factual basis for Walker's plea of guilty to voluntary manslaughter.

*Id.* at 526–27.

We found that, even though there was not a distinct temporal break in the action, the separate acts involved—hitting the victim and knocking him to the ground, and kicking him when he was on the

ground—provided separate factual bases for the two guilty pleas. *Id.* We did not find that a break in the action was required in order to find multiple acts—merely that a break was a way to define if a separate act had occurred. *See id.*

In a series of unpublished decisions, our court of appeals has consistently used the break-in-the-action test as well to determine if multiple convictions are appropriate. *E.g., Calhoun v. State*, No. 07–1688, 2009 WL 1211975, at *4 (Iowa Ct. App. May 6, 2009) (finding that, "[a]lthough not crystal clear, the minutes do support the State's alleged facts that there was . . . a break"); *State v. Rowley*, No. 07–0168, 2008 WL 4725291, at *3 (Iowa Ct. App. Oct. 29, 2008) ("There was evidence that noises from the Rowleys' apartment would end at times and then start up again."); *cf. State v. Goins*, No. 05–0557, 2006 WL 1229990, at *2 (Iowa Ct. App. Apr. 26, 2006) (concluding the "record [did] not support a factual basis for two separate crimes" because the attack was continuous and the defendant "just kept coming, kept coming").

Other courts have used a similar test to determine if the defendant committed singular or separate acts. In *Spencer v. State*, the Supreme Court of Delaware noted that "a defendant may be convicted of more than one count of a crime without violating the multiplicity doctrine if the defendant's actions are sufficiently separate in time and location to constitute distinct acts." 868 A.2d 821, 823 (Del. 2005). In *Spencer*, the victim was pumping gas when the defendant emerged from a car and began arguing with him. *Id.* at 822. The defendant shot the victim in the right knee, then, four to six seconds later, shot him again in the right buttock after the victim turned and began to move away. *Id.* The court found that even this small temporal and spatial separation—this break in the action—was sufficient for a trier of fact to find that the defendant had

formed two separate intents, and thus, committed two separate acts. *Id.* at 824.

c. *Completed-acts test.* We have previously evaluated whether a series of individual sexual contacts constituted discrete "sex acts" that would give rise to individual counts of sexual abuse in the second degree for a series of acts with two victims. *State v. Constable*, 505 N.W.2d 473, 477 (Iowa 1993). The legislature specifically defined the actions that would be classified as a sex act, and we determined that "any single physical contact so described is sufficient to meet the definition of 'sex act.'" *Id.* at 477. We further found that the legislature's language "express[ed] legislative intent that the commission of *any single physical contact* described in [the statute] is a sex act sufficient to complete a sexual abuse crime when other proscribed circumstances exist." *Id.* at 477–78 (emphasis added).

In California, the determining factor in whether the defendant committed a separate act or a single course of conduct in the commission of an assault is based on whether a violation was "complete." *People v. Johnson*, 59 Cal. Rptr. 3d 405, 412 (Ct. App 2007). The court's reasoning is instructive.

> Defendant indisputably committed successive acts of violence against [the victim]. Although [the victim]'s testimony does not precisely describe the sequence of the beating, we do know that defendant beat her about the face and head; held her by her throat up against the wall; beat her on her back, hips, and legs; and stabbed her in the upper arm. [The victim] suffered two black eyes, a split lip, bruises to her neck, back, and hips and a puncture wound to her upper arm. From this evidence the jury could have concluded that defendant completed one violation of [the law prohibiting willful infliction of corporal injury] when he beat [the victim] about the head and face, blackening her eyes and splitting her lip; another when he held her by the throat and continued to strike her and restrain her such that she suffered bruises about her back and neck; and another when he injured her upper arm, drawing blood and leaving a

visible scar. Accordingly, the evidence is sufficient to support the three convictions . . . .

*Id.*

Similarly, other states have adopted the completed-acts test. *State v. Haney*, 842 A.2d 1083, 1085 (R.I. 2004) (finding that two assaults were not a single continuous offense, as one had "long since been completed before the second assault occurred"); *cf. State v. Pelayo*, 881 S.W.2d 7, 12–13 (Tenn. Crim. App. 1994) (finding a single continuous act despite separation in time and space because the defendant had only formed one intent to harm his victim).

3. *Velez committed at least two separate acts of willful injury.* In establishing a factual basis regarding what actually happened during the attack, we rely on Welsh's minutes of testimony and Velez's concession that Kennedy sustained multiple serious injuries to find that Velez committed at least two completed acts constituting willful injury causing serious injury in violation of Iowa Code section 708.4. Welsh described both a break in the action and a series of acts that would each constitute a completed act if serious injury resulted. Specifically, Welsh's minutes of testimony describe Velez striking Kennedy "20 to 40 times" with a metal pole. Since either a single blow or a single series of blows caused each serious injury, we find that there were more than two completed acts, as Kennedy suffered at least two serious injuries. Similarly, we find a break in the action occurred. Velez stopped hitting Kennedy long enough to pat him down, and Welsh's testimony infers Velez was looking for money. When he found no money, only a knife, Velez resumed hitting Kennedy. There was also a break in the action when Kennedy produced a lighter, which resulted in a break in the prior assault, followed by

another discrete assault. These breaks in the action are sufficient to constitute two acts of willful injury when serious injury results.

We find that under either the completed-acts test or the break-in-the-action test, Velez committed two acts meeting the statutory definition of willful injury. *See* Iowa Code § 708.4. Either of these tests is sufficient to find a factual basis for two convictions of willful injury. As a result, we find that Velez's counsel was not ineffective for failing to object to the plea on the ground that there was no separate factual basis for a second count of willful injury.

### VI. Double Jeopardy.

Velez further challenges one of his two convictions on the basis of the Double Jeopardy Clause of the Fifth Amendment, which provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Fourteenth Amendment makes the Federal Constitution's Double Jeopardy Clause applicable to state criminal trials. *State v. Franzen*, 495 N.W.2d 714, 715 (Iowa 1993). Velez does not argue that his conviction is a violation of the Iowa Constitution. Unlike some other constitutional provisions, Iowa's double jeopardy clause is distinct from the Federal Double Jeopardy Clause, merely requiring that "no person shall after acquittal, be tried from the same offence." Iowa Const. art. I, § 12. As Velez was not acquitted, we need not evaluate his claims based on Iowa's double jeopardy clause.

In contrast, the Federal Double Jeopardy Clause protects against three types of offenses: protection against a second prosecution after acquittal; protection against a second prosecution after conviction; and protection against multiple punishments for the same offense. *Franzen*, 495 N.W.2d at 716.

It is well established in Iowa law that a single course of conduct can give rise to multiple charges and convictions. *See State v. McKettrick*, 480 N.W.2d 52, 57 (Iowa 1992) (discussing how we typically resolve "[t]he question of whether the legislature intended that a criminal defendant may be cumulatively punished based upon a single incident"). "In considering a double jeopardy claim within the multiple punishments context, we are guided by the general principle that the question of what punishments are constitutionally permissible is no different from the question of what punishments the legislature intended to impose." *Id.* at 57. In order to determine if Velez's second conviction constitutes a violation of his double jeopardy protections, the key question we must answer is what the legislature intended would constitute a unit of prosecution under Iowa Code section 708.4. In our analysis of whether two distinct factual bases existed to accept Velez's guilty plea, we analyzed legislative intent. We found that under both the break-in-the-action test and the completed-acts test, Velez committed two or more discrete acts of willful injury. Because the legislative intent was to punish these two or more acts, double jeopardy is not violated.

## VII. The Rule of Lenity.

Velez argues the statute is ambiguous, therefore triggering the rule of lenity. We construe criminal statutes strictly and resolve doubts in favor of the accused. *State v Lindell*, 828 N.W.2d 1, 12 (Iowa 2013). However, we only invoke the rule of lenity after we have "exhausted all interpretive techniques, including consideration of legislative history and other extrinsic evidence." *State v. Hearn*, 797 N.W.2d 577, 586 (Iowa 2011). *Hearn* represents an exhaustive look at the way the United States Supreme Court and our courts have interpreted the rule of lenity and concludes that the rule of lenity is only appropriately applied in cases of

"grievous ambiguity" and only as a "tie breaker in cases where there is no basis for choosing among plausible interpretations of a statute." *Id.* Here, we are able to discern the legislative intent. Consequently, the rule of lenity does not apply.

### VIII.  One Homicide Rule.

Velez urges us to expand the "one homicide" rule to apply to convictions under the willful injury statute. We decline to do so. The one homicide rule merely states that "where the offenses arise from one homicide, we permit sentencing on only one of the two homicide offenses." *State v. Wissing*, 528 N.W.2d 561, 567 (Iowa 1995) (citing *State v. Gilroy*, 199 N.W.2d 63, 68 (Iowa 1972), where we cited secondary sources in supporting the rule that "two sentences imposed as the result of one homicide . . . is double punishment"). Further, in *Wissing*, we specifically stated the one homicide rule does not apply in cases where separate nonhomicide offenses were committed. *Id.* "Generally, a defendant who is convicted of distinct offenses may be punished for both." *Id.*

Velez offers no justification for extending the one homicide rule. He does not dispute that Kennedy suffered more than one serious injury. In contrast, if a defendant is convicted of more than one homicide with respect to the same victim, the State will not be able to show more than a single death. We find no reason to expand this seldom-used doctrine.

### IX.  Collateral Estoppel.

Velez argues that collateral estoppel should apply. "The [United States] Supreme Court has made it clear that the doctrine of collateral estoppels applies against the government as part of double jeopardy." *State v. Halstead*, 791 N.W.2d 805, 816 (Iowa 2010) (citing *Ashe v. Swenson,* 397 U.S. 436, 442–46, 90 S. Ct. 1189, 1193–95, 25 L. Ed. 2d

469, 474–76 (1970)). However, Velez has no collateral estoppel claim. If a defendant has been found guilty by one trier of fact, "[u]nder collateral estoppel, a conclusive determination of a jury cannot be tried in a separate successive proceeding." *Id.* Both of Velez's guilty pleas occurred in a single proceeding. We find this argument to be without merit.

## X. Conclusion.

Legislative intent is the key to determining whether Velez's constitutional protection against double jeopardy has been violated and whether there is a sufficient factual basis to support his conviction on two counts of willful injury. Because we believe the legislature intended to establish multiple punishments for multiple completed acts of willful injury, the decision of the court of appeals is vacated and the judgment of the district court is affirmed.

We also find that there was a factual basis for the district court to accept the two guilty pleas. Thus, counsel was not ineffective in allowing Velez to enter guilty pleas to two separate counts of willful injury causing serious injury.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

All justices concur except Wiggins and Appel, JJ., who dissent.

**WIGGINS, Justice (dissenting).**

I respectfully dissent. We should not adopt a legal standard that recognizes repeated acts in a single course of criminal conduct perpetrated against the same victim as distinct units of prosecution. Therefore, I disagree with the majority's conclusion that a factual basis exists to support the defendant's second willful injury charge.

The statute under examination prohibits the willful injury of another. It provides:

> Any person who does *an act* which is not justified and which is intended to cause serious injury to another commits the following:

> 1. A class "C" felony, if the person causes serious injury to another.

Iowa Code § 708.4(1) (2009) (emphasis added). Because the legislature did not define what constitutes "an act" causing serious injury—be it a continuous course of conduct including repetitious or multiple acts versus a single act—the statute is ambiguous. The majority's acrobatic feats and nod to other states for guidance evidences the lack of clarity in section 708.4(1). Thus, we must first apply our established principles of statutory construction to determine what "an act" means, and second, consider the application of the rule of lenity.

As we have repeatedly recognized,

> The goal of statutory construction is to determine legislative intent. We determine legislative intent from the words chosen by the legislature, not what it should or might have said. Absent a statutory definition or an established meaning in the law, words in the statute are given their ordinary and common meaning by considering the context within which they are used. Under the guise of construction, an interpreting body may not extend, enlarge or otherwise change the meaning of a statute.

*Auen v. Alcoholic Beverages Div.*, 679 N.W.2d 586, 590 (Iowa 2004) (citations omitted). We derive legislative intent not just from the language of the statute, but also from its " 'subject matter, the object sought to be accomplished, the purpose to be served, underlying policies, remedies provided, and the consequences of the various interpretations.' " *Postell v. Am. Family Mut. Ins. Co.*, 823 N.W.2d 35, 49 (Iowa 2012) (citations omitted). A statute may be ambiguous in one of two ways: " '(1) from the meaning of particular words; or (2) from the general scope and meaning of a statute when all its provisions are examined.' " *State v. Wiederien*, 709 N.W.2d 538, 541 (Iowa 2006) (quoting *Holiday Inns Franchising, Inc. v. Branstad*, 537 N.W.2d 724, 728 (Iowa 1995)). Section 708.4(1) is ambiguous because of the unclear meaning of the particular words, "an act."

The legislature expressly used the article, "an," when referring to the requisite act or acts causing serious injury. "A" is admittedly singular. *State v. Kidd*, 562 N.W.2d 764, 765 (Iowa 1997). Because "an" is a variant of the article "a," it can also be construed as singular and not collective. *Id.* at 765–66 (finding the statute referring to possession of "an offensive weapon" created three separate chargeable offenses, not one all-inclusive charge, because the defendant possessed three sawed-off shotguns). What the court failed to consider in *Kidd*, however, is a fundamental principle of statutory construction memorialized in the Code itself: "Unless otherwise specifically provided by law the singular includes the plural, and the plural includes the singular." Iowa Code § 4.1(17). We have previously applied this rule when construing criminal statutes. *See State v. Prybil*, 211 N.W.2d 308, 312 (Iowa 1973) (holding the statute governing the offense of receiving corrupt influence makes it equally illegal for a public officer to enter a series of wrongful

transactions as to accept a single gratuity, based on the statutory language referring to "any gift, commission, discount, bonus, or gratuity"). Thus, because under this rule "an" is not definitively singular or plural, looking to the language of the statute does not resolve the ambiguity inherent in section 708.4(1) regarding the proper unit of prosecution.

Adding to the confusion is the inconsistency in the language of the criminal code. Other criminal provisions expressly refer to "a series of acts" or "serious injury" caused "in the course" of the crime as the unit of prosecution. *See, e.g.*, Iowa Code § 709.2 ("A person commits sexual abuse in the first degree when *in the course* of committing sexual abuse the person causes another serious injury." (Emphasis added.)); *State v. Carter*, 602 N.W.2d 818, 822 (Iowa 1999) (recognizing that the defendant's act of slitting the victim's throat was part of a continuous series of acts involving sexual abuse, which fell into the statute's reference to "in the course of"). Thus, if the legislature intended a single act or a series of acts to constitute a unit of prosecution for willful injury, then it certainly had the wherewithal to do so when drafting section 708.4(1). More complicating is the fact that our court has construed certain criminal statutes without express reference to a "series of acts" or a "course of conduct" to include a series of acts as a single unit of prosecution. *Compare State v. Amsden*, 300 N.W.2d 882, 887 (Iowa 1981) (finding the jury should have been instructed on the joinder of a series of acts in a theft case when the prosecution charged the defendant with one count of first-degree theft based on five separate acts, even though Iowa Code section 714.2 refers only to the "theft of property"), *with State v. Melia*, 231 Iowa 332, 339, 1 N.W.2d 230, 233 (1941)

(holding the defendant's act of firing five shots very close together where two deaths resulted constituted not a single act but a series of acts).

When criminal statutes are ambiguous, we consider applying the rule of lenity. *Kidd*, 562 N.W.2d at 765. Under the rule of lenity, we strictly construe criminal statutes and resolve doubts in favor of the accused. *State v. Lindell*, 828 N.W.2d 1, 12 (Iowa 2013); *State v. Hearn*, 797 N.W.2d 577, 585 (Iowa 2011). The rule of lenity only applies when the statute is ambiguous "regarding the application of a statute to a given set of facts after examination of the text, the context of the statute, and the evident statutory purpose as reflected in the express statutory language." *Hearn*, 797 N.W.2d at 587. We have specifically recognized that "[w]here the language of a criminal statute leaves an ambiguity with respect to the unit of prosecution, courts apply the rule of lenity: in cases of ambiguity or doubt as to legislative intent, only *one offense* may be charged." *Kidd*, 562 N.W.2d at 765 (emphasis added).

This is a case where we should apply the rule of lenity because the legislative purpose for the statute is not clear, there is a risk of arbitrary criminal enforcement, and a potential for violating the separation of powers doctrine by extending criminal liability beyond that which the legislature contemplated. *Hearn*, 797 N.W.2d at 586–87. The potential for ambiguous enforcement in light of the majority's position affects crimes committed by affirmative acts. Every bill taken from a gas station's cash register could give rise to an individual charge of theft. Every threat of violence spoken in a conversation paves the way for a slew of assault charges. Each footstep on another's land could constitute an independent incident of trespass.

The implications of the majority's approach are equally disproportional regarding crimes of omissions or negative acts. *See* Iowa

Code § 702.2 (recognizing "[t]he term '*act*' includes a failure to do any act which the law requires one to perform"). For example, every minute, every hour, or every day an individual neglects to register as a sexual offender could constitute individual violations. Iowa Code § 692A.104 (2013) (requiring registration); *id.* § 692A.111 (noting the failure to register).

To follow such an approach convolutes our criminal statutes, which already include penalty enhancements for crimes involving multiple or repetitious acts in a single episode or course of conduct. *See, e.g.*, Iowa Code § 714.3A(1) (2009) (defining aggravated theft). Moreover, the majority does not clarify the law, but instead, adds to the controversy by failing to adopt one test to identify the applicable unit of prosecution. The majority cites the completed acts test and the break in action test, without expressly delineating which one Iowa courts must apply.

Courts should not throw the book at defendants by convicting on voluminous and stacked charges arising from a single course of criminal conduct against one victim. Accordingly, we should not define the unit of prosecution blow-by-blow, bone-break-by-bone-break, or bruise-by-bruise because such an approach is unfair to defendants. Although the conduct of the defendants here and the pain inflicted upon the victim is beyond reprehensible, all defendants are entitled to due process. For these reasons, I would reverse the district court decision finding sufficient factual basis for the second charge of willful injury.

Appel, J., joins this dissent.