# IN THE COURT OF APPEALS OF IOWA

No. 24-0489
Filed August 20, 2025

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**DIMARYN RAISHAWN WARE,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Jeanie Vaudt, Judge.


        Dimaryn Ware appeals his convictions and sentence for six offenses.
**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**


        Karmen Anderson, Des Moines, for appellant.

        Brenna Bird, Attorney General, and Nicholas E. Siefert, Assistant Attorney General, for appellee.


        Considered by Greer, P.J., Sandy, J., and Bower, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2025).

**BOWER, Senior Judge.**

Dimaryn Ware appeals his convictions and sentence for three counts of assault with intent to inflict serious injury and one count each of intimidation with a dangerous weapon with the intent to injure or provoke fear, willful injury causing bodily injury, and felon in possession of a firearm. Ware challenges the sufficiency of the evidence on all counts, claiming the State failed to prove his participation in the shooting. He also argues the court should have merged the willful injury causing bodily injury and assault with intent to inflict serious injury convictions relating to the shooting of M.M.-R. Upon our review, we affirm in part, reverse in part, and remand to the district court with instructions.

I.      **Background Facts and Proceedings**

On November 26, 2022, a dispute between two couples led to a confrontation on a Des Moines street, during which Ware and Raemon Close fired handguns at Javier Rodriguez's house while Rodriguez and his mother and sister stood outside.

The State charged Ware with three counts of attempted murder (Counts I, II, and III), intimidation with a dangerous weapon with the intent to injure or provoke fear (Count IV), willful injury causing bodily injury (Count V), and felon in possession of a firearm (Count VI).[1] The case proceeded to trial. Ware did not testify. The jury found Ware guilty of the lesser-included offense of assault with intent to inflict serious injury on the first three counts and guilty as charged on the

---

[1] The State filed additional charges which it dismissed before trial.

remaining counts. The district court entered judgment and sentence, and Ware appeals.

## II. Sufficiency of the Evidence

Ware claims the State presented insufficient evidence to support his convictions. We review challenges to the sufficiency of the evidence supporting a conviction for correction of errors at law. *State v. Crawford*, 974 N.W.2d 510, 516 (Iowa 2022). We are bound by the jury's verdict if it is supported by substantial evidence. *Id.* Evidence is substantial if it is sufficient to convince a reasonable juror that the defendant is guilty beyond a reasonable doubt. *Id.* To assess whether the jury's verdict is supported by substantial evidence, we view the evidence in the light most favorable to the State, including all "legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence." *Id.*

To convict Ware of assault with intent to inflict serious injury (Counts I, II, and III), the jury was instructed the State had to prove:

> 1. On or about November 26, 2022, Defendant or someone he aided and abetted did an act which was intended to cause pain or injury to M.M.-R. and/or, result in physical contact which was insulting or offensive to M.M.-R., or place M.M.-R. in fear of an immediate physical contact which would have been painful, injurious, or offensive to M.M.-R.
> 2. Defendant or someone he aided and abetted had the apparent ability to do the act.
> 3. Defendant's act or the act of someone he aided and abetted was done with the specific intent to cause a serious injury to M.M.-R.

To convict Ware of intimidation with a dangerous weapon with the intent to injure or provoke fear (Count IV), the jury was instructed the State had to prove:

1. On or about November 26, 2022, Defendant or someone he aided and abetted shot firearms at M.M.-R., J.R.-G, or J.R. (a minor.

2. A firearm is a dangerous weapon . . . .

3. M.M.-R., J.R.-G, or J.R. (a minor) actually experienced fear of serious injury and their fear was reasonable under the existing circumstances.

4. Defendant or someone he aided and abetted shot the dangerous weapon with the specific intent to injure or cause fear or anger in M.M.-R., J.R.-G, or J.R. (a minor).

To convict Ware of willful injury causing bodily injury (Count V), the jury was instructed the State had to prove:

1. On or about November 26, 2022, Defendant or someone he aided and abetted shot firearms at M.M.-R.

2. Defendant or someone he aided and abetted specifically intended to cause a serious injury to M.M.-R. or anyone near M.M.-R.

3. Defendant's act or the act of someone he aided and abetted caused a bodily injury to M.M.-R. . . .

To convict Ware of felon in possession of a firearm (Count VI), the jury was instructed the State had to prove:

1. On or about November 26, 2022, Defendant knowingly possessed, transported, caused to be transported, or had under his dominion and control a firearm.

2. Defendant was previously convicted of a felony.

Ware contests only the identity element of each crime, claiming the evidence was insufficient to prove he was the second shooter during the incident. Based on the evidence presented at trial, reasonable jurors could have found the following facts.

On November 26, Javier Rodriguez and his children's mother were upset to learn Roeman Close's girlfriend, Solmari, had called the Iowa Department of Health and Human Services with allegations about their children. Rodriguez called Solmari to confront her about the allegations, and an argument ensued between

them.  Close later followed up with Rodriguez on FaceTime and displayed a gun. Rodriguez told Close to "put that down" and "[c]ome to fight . . . like a man."  But Close "kept waving" the gun and told Rodriguez "they're on the way."

A little while later, Solmari was driving around with her sister, Angelica. They picked up Close, who asked them "to take him to his friend's house."  Close directed them to a street a few houses down from Rodriguez's.  Angelica parked the car, and Close told them to "hold on" while he got in contact with his friend. One minute later, the friend, Ware, pulled up in another car and parked alongside Angelica.  Ware and Angelica had dated "[o]ff and on for six years," so she was "familiar with him."

Close exited Angelica's car and began walking toward Rodriguez's house. Ware followed the same direction in his car.  Rodriguez exited his house and walked toward them.  Close displayed a gun, but Rodriguez said, "Put that shit away.  Let's fight."  Instead, Close retreated on foot, Ware turned his car around, and the two headed back toward where Angelica's car was parked.  Ware then exited his car, leaving it parked in the middle of the road next to Angelica's.  Ware began shooting a handgun toward Rodriguez's house.  Close joined in, shooting the same direction.  While still shooting, Ware and Close then hurried to the back passenger side of Angelica's car and jumped in as Angelica started to drive away. "[E]veryone was shouting, 'Go.'"  Meanwhile, as the shooting was happening, the front-seat passenger of Ware's car exited, crossed in front of the car, reentered to the driver's seat, and drove Ware's car away in the opposite direction.

A neighbor's security camera recorded the interaction.  Although Angelica "wasn't really paying attention" when Close got out of the car and walked toward

Rodriguez's house, she identified Ware as the person in black clothing who was also outside the vehicles with Close.[2] On the security video, Ware can be seen in a shooting stance with his arm outstretched and pointing toward Rodriguez's house.

Police responded to Rodriguez's house. Along with Rodriguez, his mother, M.M.-R., and a child, J.R., were also outside the home during the shooting. M.M.-R. had been shot and "had a graze wound to the right upper arm." M.M.-R. recalled she thought she "was going to lose everyone" "because they were not stopping." Although Rodriguez was initially uncooperative with police, he later identified the two men as Close and Ware.

Detectives investigated the scene and opined the shell casings found in the street were fired from two different guns. The placement of the two sets of casings were "consistent with the positioning" of Ware and Close, as depicted on the video, during the shooting.

On appeal, Ware acknowledges "[t]he evidence reflect[s] that there were two shooters." He further agrees that "Close was positively identified as one of the shooters." But he claims the evidence is insufficient to establish he was the other shooter. Specifically, Ware claims "[t]here was no physical evidence tying [him] to the crime." But even if the security video evidence is not considered "direct proof" of Ware's involvement, the State "presented solid circumstantial evidence that [Ware] was the shooter." *State v. Moore*, No. 22-1794, 2024 WL 3292539, at *3 (Iowa Ct. App. July 3, 2024).

---

[2] Solmari also exited the car. It is clear from the video Solmari was not a shooter, nor does Ware suggest she was.

Ware also discredits Rodriguez's identification of him as the second shooter, pointing to the following testimony from Rodriguez:

[Ware] was putting [a ski mask] on halfway when he was in the Jeep. So when they pulled up right in front of me, that's when I kind of saw him, but I wasn't sure who it was. But then pretty much Ines—and Ines is my girl's sister's girlfriend, and she knows the friend of him and [Close] very close.

However, inconsistency in witness testimony is "for the jury's consideration, and do[es] not justify a court's usurpation of the factfinding function of the jury." *State v. Williams*, 695 N.W.2d 23, 28 (Iowa 2005). Moreover, Ware ignores the fact he was identified by Angelica as the other shooter. And the jury was able to review the security video from the incident, which corroborated Angelica's testimony. "[Q]uestions about weight and credibility of the evidence are for the jury to decide." *State v. Davis*, No. 23-1783, 2024 WL 4966034, at *2 (Iowa Ct. App. Dec. 4, 2024). Indeed, the jury was instructed:

Decide the facts from the evidence. Consider the evidence using your observations, common sense, and experience. Try to reconcile any conflicts in the evidence; but if you cannot, accept the evidence you find more believable.
In determining the facts, you may have to decide what testimony you believe. You may believe all, part or none of any witness's testimony.

Although Ware maintains "any facts potentially pointing to [him] as the shooter were less than credible and were based on hearsay within hearsay," that conclusion was for the jury to make. *See State v. Thomas*, 847 N.W.2d 438, 442 (Iowa 2014) ("Inherent in our standard of review of jury verdicts in criminal cases is the recognition that the jury is free to reject certain evidence, and credit other evidence." (cleaned up)). The jury weighed the evidence and determined Ware was the other shooter. Substantial evidence supports the jury's findings.

### III.    Merger

Ware next argues the sentencing court should have merged his convictions for willful injury causing bodily injury (Count II) and assault with intent to inflict serious injury (Count V) relating to the shooting of M.M.-R.  Convictions merge when "a public offense . . . is necessarily included in another public offense of which the person is convicted."  Iowa Code § 701.9 (2023).  "This statute prevents a person from being twice convicted for the same offense, but it does not apply when there are separate offenses."  *State v. Greenland*, 17 N.W.3d 347, 351 (Iowa 2025).  The question is whether it is possible to commit the greater offense without also committing the lesser.  *State v. Goodson*, 958 N.W.2d 791, 803 (Iowa 2021).  "We review the failure to merge convictions required by statute for correction of errors at law."  *Id.* at 798.

The marshaling instructions for the relevant offenses are set forth above. To refresh, for assault with intent to inflict serious injury in Count II, the State had to prove Ware or someone he aided and abetted: "did an act which was intended to cause pain or injury to M.M.-R. and/or, result in physical contact which was insulting or offensive to M.M.-R., or place M.M.-R. in fear of an immediate physical contact which would have been painful, injurious, or offensive to M.M.-R."; with "the apparent ability to do the act"; and "with the specific intent to cause a serious injury to M.M.-R."  For willful injury causing bodily injury in Count V, the State had to prove Ware or someone he aided and abetted: "shot firearms at M.M.-R."; "specifically intended to cause a serious injury to M.M.-R. or anyone near M.M.-R."; and "caused a bodily injury to M.M.-R."

According to Ware, he "could not commit willful injury causing serious injury to [M.M.-R.] without also committing assault with intent to commit serious injury on her as well." Specifically, he claims "[b]oth offenses required an assault, with willful injury requiring a more specific assault of use of a firearm" and "[b]oth offenses required the intent to cause serious injury, with willful injury requiring an actual bodily injury." Ware further argues the shooting took place for "only nine seconds," which "does not support a break in the action to constitute a separate assault from the willful injury."

The State seems to agree there was no break in the action to support multiple assaults by Ware, as a principal, arising from the shooting. *See, e.g.*, *State v. Velez*, 829 N.W.2d 572, 582–83 (Iowa 2013) (noting "[w]e have previously used a break-in-the-action test to determine if separate acts have been committed"); *State v. Ross*, 845 N.W.2d 692, 706 (Iowa 2014) (observing a series of gunshots by one shooter, even with a pause, as one act). The State maintains, however, "the convictions need not merge because they are supported by separate conduct"—namely, Ware's conduct as a shooter for one offense and as an aider and abettor for the other offense.

"There is no question that as a general proposition, the crime of willful injury cannot be completed without also completing the crime of assault with intent." *State v. Love*, 858 N.W.2d 721, 725 (Iowa 2015). Under the instructions, the jury was to determine whether "[Ware] directly committed the crime, or knowingly 'aided and abetted' other person(s) in the commission of the crime" for both assault with intent to inflict serious injury and willful injury causing bodily injury. *Accord* Iowa Code § 703.1 ("All persons concerned in the commission of a public offense,

whether they directly commit the act constituting the offense or aid and abet its commission, shall be charged, tried and punished as principals."). In other words, there is no difference between Ware's liability as a principal or as an aider or abettor, *see State v. Black*, 282 N.W.2d 733, 735 (Iowa 1979), and if the evidence was sufficient to show Ware took part in the shooting, it did not matter if he fired the shot which caused M.M.-R.'s bodily injury, *see State v. Shorter*, 893 N.W.2d 65, 71 (Iowa 2017).

In this case, "the jury was never asked to do the fact-finding necessary to support two separate assaults." *Love*, 858 N.W.2d at 725; *see also State v. Hickman*, 623 N.W.2d 847, 851 (Iowa 2001) ("If the greater offense is defined alternatively and the State charges both alternatives, the test for included offenses must be applied to each alternative."). And because we do not know—based on the jury instructions provided here and the jury's general verdict—whether the jury determined one offense related to Ware's conduct as an aider and abettor and the other offense related to Ware's conduct as a principal, merger is our only option. *But see State v. Canady*, 4 N.W.3d 661, 674 (Iowa 2024) (concluding offenses did not merge because the jury was instructed "the voluntary manslaughter count involved the defendant's alleged aiding and abetting of another person's shooting of the victim, and the willful injury count involved the defendant's own alleged beating of the victim"). "[W]hen alternatives are present and one alternative requires merger, merger is required if it is impossible to determine which

alternative the jury used."[3] *Greenland*, 17 N.W.3d at 352 (quoting *Goodson*, 958 N.W.2d at 804).

After comparing the marshaling instructions and statutory elements of assault with intent to inflict serious injury and willful injury causing bodily injury, we conclude the sentences on the offenses should merge.[4] "The judgment and sentence imposed upon [Ware] for assault with intent is unlawful and must be vacated. The conviction related to willful injury, however, is valid and remains undisturbed." *Love*, 858 N.W.2d at 725 (internal citation omitted); *see also id*. at 726 (Mansfield, J., concurring specially) ("When the instructions permit the jury to convict the defendant twice of the same offense (or of an offense and a lesser included offense) based on the same conduct, and two guilty verdicts are returned,

---

[3] The State argues the offenses should not merge "[b]ecause Ware's convictions on Counts II and V are supported by evidence of separate assaults, committed by separate people, [and] separate punishments are lawful." However, because we have found there was no break in the action and we do not know which alternative the jury used, merger is required.

[4] The State argues if we agree Ware's claim is actually "a challenge to whether the two verdicts were adequately supported by separate conduct proven at trial," rather than an illegal-sentence claim, "then Ware did not preserve error." Our courts have "recognized 'conflicting case law' on the question whether unit-of-prosecution challenges strike at the substance of the conviction or the legality of a sentence." *State v. Baker*, No. 15-1230, 2016 WL 4384659, at *2 (Iowa Ct. App. Aug. 17, 2016) (citing cases).

> Of course, even if the defendant failed to object to the instructions and verdict forms, he or she could later argue that merger of the convictions was required, because the error preservation rule does not apply to a defendant's statutory claim of an illegal sentence. But in that event, merger would not occur so long as substantial evidence supported a determination that two separate criminal acts had occurred.

*Love*, 858 N.W.2d at 728 (Mansfield, J., specially concurring). Here, the State concedes the evidence does not support a finding of two assaults. Under these circumstances, merger is appropriate.

merger must follow.").  We remand to the district court for resentencing on Ware's remaining convictions.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**