# IN THE COURT OF APPEALS OF IOWA

No. 12-1872
Filed June 25, 2014

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**NICHOLAS A. MCFARLAND,**
        Defendant-Appellant.
_____


Appeal from the Iowa District Court for Calhoun County, Kurt L. Wilke, Judge.


Nicholas McFarland appeals his convictions and sentences for assault and assault causing bodily injury.  **AFFIRMED.**


Mark C. Smith, State Appellate Defender, Martha J. Lucy, Assistant Appellate Defender, and Kyle Mendenhal, Student Legal Intern, for appellant.

Thomas J. Miller, Attorney General, Tyler J. Buller, Assistant Attorney General, Tina Meth-Farrington, County Attorney, and Cynthia Voorde, Former County Attorney, for appellee.


Considered by Vogel, P.J., and Doyle and Mullins, JJ.

**DOYLE, J.**

Following a jury trial, McFarland was convicted of assault and assault causing bodily injury. Maintaining there was no "break in the action" during the assault, he appeals alleging his trial counsel was ineffective in failing to request a special interrogatory concerning the number of assaults and in failing to object to jury instructions that presupposed two separate and distinct incidents. He also contends the trial court abused its discretion in imposition of McFarland's sentences. We affirm.

### I. Background Facts and Proceedings.

A bar fight on the night of November 12, 2011, at Pug's Pub in Lohrville, Iowa sent Bill Thompson to the hospital with two broken teeth, a broken ankle, lacerations on his face, and "multiple brain bleeds." A reasonable jury could have found the following facts based upon the evidence presented at trial.

Thompson and Doug Dearborn, owner of Pug's Pub, arrived at Dearborn's pub about 11:00 p.m. after having attended a firefighters' fundraiser. McFarland, his father, and a friend were at the bar. Thompson did not appreciate the way McFarland was talking to Hope Stevens, a female bartender, so he pretended to be her boyfriend. At some point there was some shouting, and a confrontation ensued. Responding to the yelling and scuffling, Dearborn moved towards the front of the pub. He opened the front door and told the McFarland party, "You guys got to go." At this point, Thompson was slugged in the face by McFarland. Thompson's hat flew off, and his glasses went flying. He was knocked to the ground after being hit. Stevens pushed the McFarland party out the front door. The door closed behind her. Thompson picked up his hat and began looking for

his glasses. He found them in a dimly lit area by the dart board, put them on, and checked his face for a cut. It took approximately twenty to thirty seconds, "maybe more," for Thompson to find his glasses.

Stevens came back in, and when she was just getting up to the bar, Thompson went towards the front door and went outside to smoke a cigarette. Stevens followed about ten seconds later. After taking a couple of steps outside, Thompson was again slugged by McFarland and knocked to the ground. When Stevens went outside she found Thompson "on the ground snoring" and McFarland "jumping around." About ten seconds after Thompson had gone outside, someone opened the front door and said, "Dial 911."

Ultimately, McFarland was charged with one count of assault causing bodily injury for "[assaulting Thompson] inside [the pub and] causing bodily injury to him," count I, and one count of willful injury for "[assaulting Thompson] outside [the pub] with the intent to cause serious injury and causing serious injury," count II. The case was tried to a jury in August 2012. The jury found McFarland guilty of one count of assault, in violation of Iowa Code section 708.1(1) (2011), a simple misdemeanor, and one count of assault causing bodily injury, in violation of sections 708.1(1) and 708.2(2), a serious misdemeanor.

McFarland was sentenced to thirty days in jail, with all but ten days suspended for the assault conviction, and one year in jail, with all but six months suspended for the assault-causing-bodily-injury conviction. The sentences were ordered to be served consecutively.

McFarland appealed, and he asked the supreme court to treat the notice of appeal of his simple misdemeanor conviction as an application for

discretionary review. On April 18, 2013, the supreme court granted the request for discretionary review of the simple misdemeanor. The appeal was transferred to this court on May 5, 2014.

## II. Discussion.

On appeal, McFarland contends there was no "break in the action" during the assault and his trial counsel was therefore ineffective in failing to request a special interrogatory concerning the number of assaults and in failing to object to jury instructions that presupposed two separate and distinct incidents. He also contends the trial court abused its discretion in imposition of McFarland's sentences.

### A. Ineffective-Assistance-of-Counsel Claim.

"We review claims of ineffective assistance de novo." *State v. Brothern*, 832 N.W.2d 187, 192 (Iowa 2013). To prevail on his claim of ineffective assistance of counsel, McFarland must show (1) counsel breached an essential duty and (2) prejudice resulted. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Although we often preserve ineffective-assistance claims for postconviction-relief actions, "we will address such claims on direct appeal when the record is sufficient to permit a ruling." *State v. Finney*, 834 N.W.2d 46, 49 (Iowa 2013). The record here allows us to address McFarland's ineffective-assistance claim on direct appeal.

Regarding count I, instruction number 13 asked the jurors to find whether "[McFarland] hit [Thompson] inside Pug's Pub." Regarding count II, instructions number 17, 19, 20, 21, and 22 asked the jurors to find whether McFarland committed a particular offense "outside of Pug's Pub." The crux of McFarland's

ineffective-assistance-of-counsel claim is that his trial counsel "failed to recognize the presupposition of two distinct incidents in the jury instructions." He argues the "testimony indicates Thompson may have been hit twice in the course of a single, continuous incident without a sufficient 'break in the action' to constitute separate assault convictions." He relies primarily upon *State v. Velez*, 829 N.W.2d 572, 572 (Iowa 2013), which was decided almost eight months after McFarland was tried. In *Velez*, the fighting issue was "whether Velez committed two 'acts' causing serious injury." 829 N.W.2d at 577. The supreme court recognized three tests courts have used "in determining what constitutes multiple acts and thus could be considered multiple counts." *Id.* at 581. Those tests are the separate-acts test, the break-in-the-action test, and the completed-acts test. *Id.* at 581-83. Without endorsing any particular test, the court found that "under either the completed-acts test or the break-in-the-action test, Velez committed two acts meeting the statutory definition of willful injury." *Id.* at 584.

After the parties filed their briefs in this case, the supreme court filed three decisions enumerating six factors to determine if a defendant's conduct is one continuous act or a series of separate and distinct acts. *See State v. Ross*, 845 N.W.2d 692, 705 (Iowa 2014); *State v. Gines*, 844 N.W.2d 437, 441 (Iowa 2014); *State v. Copenhaver*, 844 N.W.2d 442, 449-50 (Iowa 2014).

In *Ross*, the supreme court explained:

> When the general assembly defines a unit of prosecution based upon an act or omission of the defendant, our decision in *Velez* and cases in other jurisdictions have considered certain factors to aid the fact finder in determining if the defendant's assaultive conduct is one continuous act or a series of separate and distinct acts. These factors are (1) the time interval occurring between the successive actions of the defendant, (2) the place of

the actions, (3) the identity of the victims, (4) the existence of an intervening act, (5) the similarity of defendant's actions, and (6) defendant's intent at the time of his actions. We also use these factors to determine if substantial evidence supports the fact finder's verdict.

845 N.W.2d at 705 (internal citations and footnotes omitted).

In applying these factors, we note the typical discrepancies among the witnesses' descriptions of the temporal spacing of McFarland's actions against Thompson. Dearborn testified it took Thompson some twenty to thirty seconds, "maybe more" to find his glasses after being slugged by McFarland. Thompson then took two to three steps to get to the front door to go outside. One pub patron testified Thompson came out of the pub "a couple of minutes" after the McFarland party came out of the pub. Another pub patron testified she waited "about ten minutes," "it was a little bit, yeah," before going outside after the altercation inside. She said Thompson came outside "a couple of minutes after we got out there." She also said Thompson had been outside for five to ten minutes before getting hit.

Regardless of the witnesses' testimony discrepancies, the evidence establishes that there was a definite pause in the action between the first punch and the second punch. There was a break in the action. Another factor is the location of the punches. One took place inside the pub; the second took place outside. Although Thompson was the only victim of the crimes, "a defendant may assault the same victim twice, as long as the assaults are separate and distinct acts." *Id.* at 705-06 (citing *Velez*, 829 N.W.2d at 584). McFarland's act of exiting the pub and having the door close behind him before delivering the second punch shows an intervening act. This was not a bar brawl that happened

to just spill out onto the sidewalk. McFarland's conduct was not one continuous act; his two punches were separated both spatially and temporally. The assaults were separate and distinct acts.

Therefore, we find substantial evidence supports McFarland's conviction for two counts of assault based on the factors enumerated. Accordingly, McFarland's trial counsel had no duty to either request a special interrogatory concerning the number of assaults or object to the jury instructions that presupposed two separate assaults occurred. *See Brothern*, 832 N.W.2d at 192 ("We will not find counsel incompetent for failing to pursue a meritless issue."). Furthermore, McFarland cannot demonstrate prejudice for ineffective-assistance purposes, because there is no reasonable probability the result of the trial would have been different had trial counsel requested a special interrogatory or objected to the instructions. McFarland has failed to prove his claim of ineffective assistance of counsel.

### B. Sentencing Claims.

McFarland also claims the sentencing court abused its discretion in considering irrelevant evidence to find a lack of remorse by McFarland and in failing to give adequate reasons for imposing consecutive sentences. Our review of the district court's sentencing decision is for the correction of errors at law. *State v. Thomas*, 547 N.W.2d 223, 225 (Iowa 1996). The decision "to impose a sentence within statutory limits is cloaked with a strong presumption in its favor." *State v. Formaro*, 638 N.W.2d 720, 724 (Iowa 2002). The sentence will not be upset on appeal "unless the defendant demonstrates an abuse of trial court discretion or a defect in the sentencing procedure, such as trial court

consideration of impermissible factors." *State v. Grandberry*, 619 N.W.2d 399, 401 (Iowa 2000). "An abuse of discretion is found only when the sentencing court exercises its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *Thomas*, 547 N.W.2d at 225.

In criminal cases the court is to "state on the record its reasons for selecting the particular sentence." Iowa R. Crim. P. 2.23(3)(d). A sentencing court may properly consider a defendant's lack of remorse in making a sentencing decision. *State v. Knight*, 701 N.W.2d 83, 88 (Iowa 2005).

McFarland's lack-of-remorse complaint is founded upon the sentencing court's statement:

> I'm also looking through the materials provided to me by the State, in particular the pictures and also, apparently, your tweets or whatever during the course of the trial. I don't see a whole lot of remorse in either of—any of the documents that have been presented to me.

The court's reference is to documents attached to the State's notice of sentencing evidence, which includes McFarland's criminal history, a victim impact statement, a statement of financial harm to victim, evidence of McFarland's mixed martial arts activities, and McFarland's "post-crime activities and attitude toward the criminal justice system," including Facebook posts and photos. In one post, made the day the jury returned its guilty verdict, McFarland declared: "yes! im so glad the state of iowa wasted thousands of dollars to find me guilty and in the end they look like a bunch of dumb hillbillys… woot woot! party in rockwell city tonight :)." It was not unreasonable for the sentencing court to conclude that McFarland lacked remorse for his acts. That Facebook posts were the basis for the court's conclusion matters not. Before making a

determination of what sentence to impose, "a judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come." *United States v. Tucker*, 404 U.S. 443, 446-47 (1972).  Furthermore, "[a] defendant's lack of remorse can be discerned by 'any admissible statement made by the defendant pre-trial, at trial, or post-trial.'" *Knight*, 701 N.W.2d at 87-88 (citation omitted).  We find no abuse on the part of the sentencing court.

McFarland also contends the sentencing court abused its discretion by failing to provide an adequate explanation for imposing consecutive sentences. After discussing McFarland's Facebook postings and other materials provided by the State, the sentencing court went on to say:

> And the fact that you received a deferred once before and then lost that deferred is even more bothersome.  It gets to the point, quite frankly, Mr. McFarland—I realize you're a young man, but it gets to a point where, yes, indeed, we're looking at rehabilitation but sometimes we have to really make an impact upon people as far as what they've done wrong and what's going to happen next time they appear in front of this court..
> So I'm going to go along with the State's recommendation.
> . . . .
> The sentences of incarceration or the sentences themselves of incarceration shall run consecutively to each other.

The State had recommended consecutive sentences.  The court went on:

> Now I want to tell you this: You think this is a harsh sentence, but I think—I think, quite frankly, it is probably not as great as I would have given you had I not gone along with the State's recommendation.  I tend to be kind of tough on issues like this because you did cause some serious harm to another human being, and I don't ever want you back here again.

"If a person is sentenced for two or more separate offenses, the sentencing judge may order the second or further sentence to begin at the

expiration of the first or succeeding sentence." Iowa Code § 901.8. A sentencing court must state, on the record, its reason for selecting a particular sentence. *State v. Barnes*, 791 N.W.2d 817, 827 (Iowa 2010) (citing Iowa R. Crim. P. 2.23(3)(d)). The court must also provide reasons for imposing consecutive sentences. *Id.* "A statement may be sufficient, even if terse and succinct, so long as the brevity of the court's statement does not prevent review of the exercise of the trial court's sentencing discretion." *State v. Hennings*, 791 N.W.2d 828, 838 (Iowa 2010). We may look to the court's overall sentencing rationale to glean the reasoning for imposing consecutive sentences. *See id.* at 838-39 ("[I]t is apparent to us that the district court ordered the defendant to serve his sentences consecutively as part of an overall sentencing plan.").

In *Hennings,* our supreme court, reviewing the sentencing colloquy, stated the sentencing "court spoke at length about the information it considered in making a sentencing determination and specifically, what factors influenced its ultimate decision. This is not a situation where the court 'failed to give even a terse explanation of why it imposed consecutive, as opposed to concurrent sentences.'" 791 N.W.2d at 838 (citation omitted). Not a single word or sentence in *Hennings* was directly expressed explaining why consecutive sentences were imposed. *See id.* at 838-39.

Although the sentencing court here provided no explicit connection between its sentencing plan as a whole and its decision to impose the consecutive sentence, we can conclude the court's reasoning is apparent from the overall sentencing rationale. *See id.* Thus, we find the sentencing court did not abuse its discretion in imposing consecutive sentences.

***III. Conclusion.***

Substantial evidence supports McFarland's two assault convictions. McFarland failed to establish his trial counsel was ineffective in failing to request a special interrogatory concerning the number of assaults or object to the jury instructions that presupposed two separate assaults occurred. McFarland also failed to establish that the district court abused its discretion in sentencing. Consequently, we affirm McFarland's convictions and sentences.

**AFFIRMED.**